The next case please. 314-214, people of the state of Oklahoma, and members of the town of Serrano, residents of Nicola State and the most affluent by 10 years old. Ms. Serrano. May I please report? Good morning, your honors. Counselor. In this case, we are asking the court to reverse the trial judge's order granting the defendant's motion to quash and suppress, quash arrest and suppress evidence. The trial judge found that there was no reasonable suspicion of criminal activity to warrant the continuing investigation, which resulted in Mr. Daniels being found to have committed, or probable cause to believe he was committing DUI. On September 1st, 2014, the officer Brett Higg testified that he was called to the scene at the Hardee's where a motorist who was passed out in the, or at least unconscious in the drive-thru of the Hardee's, but the motor still running. When he arrived at the scene, he observed a person in the driver's seat of a Volkswagen. He appeared unconscious or asleep. He approached the vehicle. He yelled at the person who did not awaken. He then reached into the vehicle. It appears that he either turned off the vehicle or removed the keys and then shook the person to awaken them. When the person awoke, Officer Higg observed that the person had bloodshot eyes and had the smell or odor of alcohol emanating from him. The defendant subsequently, other things happened thereafter that aren't necessarily relevant to the discussion of the case. It goes through what happened. An ambulance had been waiting nearby for the officer to say it was clear for them to arrive. The officer testified that that was the policy of the ambulance, and so he followed that policy. When the ambulance then came, the officer stepped aside. The ambulance personnel talked with the defendant and then left without anything being done. The officer then re-approached the vehicle and subsequently field sobriety tests were administered, etc. What happened is the defendant then filed a motion to quash arrest and suppress evidence. After several different hearings on this in which the officer testified, there was argument and finally the trial judge essentially found that once the officer had approached the vehicle and stopped the vehicle, turned it off, there was nothing further that needed to be done and the officer should have, I guess, just gone away. The cases that are relevant to this case are People v. Robinson, which is First District 2006 case, and People v. Carlson, which is a 1999 case from this court. In the Robinson case, the very similar set of circumstances. The officer is called due for a 911 well-being. Apparently, when the officer arrives at the scene, he finds a Cadillac Escalade running. Somebody is apparently passed out behind the drivers, behind the steering wheel. The officer approaches, calls dispatch to ensure that there is an ambulance on the way and then knocks onto the window. The driver doesn't wake up. He opens the door, tries to waken the driver. When that doesn't work, he again makes sure that an ambulance is on the way and then he shakes awake the defendant. The court in that case found that that was part of the community caretaking function in approaching the vehicle and making sure that the defendant was all right. Specifically, the court said the physical contact by Officer Stevens, and this is the Robinson case, was made with the defendant in order to check his well-being and assist the defendant in regaining consciousness. That is essentially what happened in this case. Similar factual scenario in Carlson. The officer came across an individual who was passed out in the vehicle and he approached and then smelled when he awoke or when the window was opened, he smelled alcohol. Same thing with Robinson. When the driver was awoken, he observed the smell of alcohol and bloodshot eyes. Simply put, we assert that the trial judge's finding that the officer should have simply stopped is unreasonable under the circumstances in which he is attempting to check on the well-being and assist the defendant in regaining consciousness. It is based on Robinson and Carlson. We believe that the trial judge erred and therefore we ask this court to reverse and remand for further proceedings. Are there questions? Thank you. Mr. Arado. Mr. Hamel. May I introduce the court? Counsel. My name is Ted Hamel and I represent the appellee. What I found troubling in the facts of the case was the fact that an ambulance is called to a scene but the officer stated clearly he had to secure the premises, had to secure the area. When you secure an area, just the common use of the word, there's something else must be going on in order for that area to be secured. There's something else that almost sounds as if it's criminal in nature to secure the area. Here we didn't have any call for any disturbance of the peace or alcohol in person or causing disruption in the drive-through line. All there was was a call for a person to come, a call for a person passed out or incapacitated. So when the ambulance arrives and the officer says he has the ambulance wait until the area is secured, well then it tells me that there's no exigent circumstance for any criminality. There's no evidence of any criminality or exigent circumstances except for the fact that an ambulance called. So clearly... Well, but the ambulance calls the guy that's passed out behind the steering wheel at the drive-up of a fast food restaurant at what, 1 in the morning or something, 3 in the morning? Correct. And I agree. And I didn't mean to cut the court off. I agree that that would be a medical emergency because we don't know why. Or an alcohol emergency. Well, that would presuppose a point. That could be one or the other. It could be, but wouldn't you rather Aaron's out of caution saying he has a medical issue first instead of securing the area? I don't know. Well, what's he going to do with anything? Because it changes it from a community caretaking function. Is he really doing a community caretaking function if he has to secure the area? Or is he assuming a criminal act has occurred? It doesn't matter. Is there enough there for a Terry stop? You get a call to investigate. The guy's passed out behind the wheel, and then ultimately, correct me if I'm wrong, the folks in the ambulance went up there, examined him, looked at him, and said, gee, there's no medical issue. Although some people might argue alcohol is a medical issue. But they said there's no medical issue, and thereupon they look him over, and then the officer continued his investigation. What's wrong with that? But, Justice, the way the officer testified, the way he portrayed it, he had him wait in an area, not necessarily next to until he secured the area and had him come forward. Go ahead. Do you dispute the state's assertion that this was because the ambulance company had a policy? No, it was not the ambulance company, Justice. It was the Village of Plainfield's policy. That's the way I took it in the transcript. The Village of Plainfield had a policy. I don't necessarily believe it was the ambulance company, and I may be wrong. I thought it was the village, that they had to wait until the area was secured, which, as the court pointed out, you know, heaven forbid, if they're low on manpower to secure an area, if something happens to an individual. Well, secure an area, I'm assuming that that means for the police to go in and make sure that it's safe for the ambulance to come in, because oftentimes when ambulances get called to some of these things, there's stuff going on and still happening, and they don't want to get in the middle of it. Agreed, and there was a case that we pointed out in our brief, Schaefer. Now, in Schaefer, coincidentally, it was a Wendy's restaurant, and they got a call of a disturbance at a Wendy's restaurant, somebody had intoxicated, and they found the vehicle out. In that case, I agree that they had something there, and I would agree if he passed out while he was driving, they should secure it. But this is, this, well, he did pass out while he was driving. No, I didn't. And in this case, why isn't this whole securing the area just a big red herring? What's it got to do with anything? Because it implies that there's some criminal activity going on, but there wasn't any. Well, it turns out there was. So, so what? Because securing it means, because, Justice, if they thought he was, if they believed that he was injured and needed ambulance help, shouldn't he proceed with the ambulance tech rather than go it alone? Because he's obviously not, he doesn't have the skill of an EMT to go up and help the individual who may, for a number of reasons, be passed out, not necessarily due to alcohol. Well, if that happened, and because the police delayed the ambulance getting there, and this guy suffered some medical problem and health issue, because I suppose he could have sued the police or the city or somebody because they delayed the people. But that's not, what's it got to do with what we're talking about here today? Well, that's my point. My point is that there was an exigent criminal activity. The only exigent activity was medical necessity or the question of medical necessity, not necessarily because, to me, it makes no difference if it's 3 in the morning or 3 in the afternoon. Basically, the policy would have been the same, that they have to secure the area, which the time of day should be immaterial. Isn't the issue whether this officer had the right to investigate somebody who was passed out behind the steering wheel in a drive-through of a fast food restaurant? And to think that, gee, that gives a reasonable, articulate suspicion, and you add the time of night, that this young fellow might have had too many pops. But first he has not the, then the ambulance people look at him and say, no medical issue, which then is some other kind of issue. Would you want to let the guy just drive away after he's just passed out? Justice, to me, when he approached the vehicle and awoke him, the only thing he had at that time, there was no, as evidenced in my brief, the conversation between myself and the officer, there was no request for any type of injury at that time, and he didn't see any visible injuries, so now why send him to the EMT? Unless he's not qualified or trained to notice any injuries, which brings back the thing of community caretaking function, is he really there for a crime that he doesn't have a suspicion may have happened, or is he there to possibly be a pseudo-EMT? Would it be, and again, the police officer's subjective state of mind is clearly under the law irrelevant. And so the question is, it seems to me the issue is here, does this fellow who's passed out behind the wheel of a running car, and he pulls in to order his burger or fries or whatever he's ordering, and they look out, and he's passed out behind the wheel with the car running, and does that give a reasonable article of suspicion to a police officer, maybe add on that he has a right to do a little investigation to see if this person is bombed or hurt or having a heart attack? I guess I'd find that argument, in my opinion, more persuasive had the EMT approach it first because there was no sense of danger to the EMT. I don't think a running car is dangerous. I mean, the officer reached in and disabled the car, turned it off. And I don't remember the exact point, and that's a good point, when he took the keys, all right, but when you take the keys, you've got to be in park. And I don't exactly, I can't remember the transcript verbatim, but if the car was in park and he took the keys, there's no danger of the car going anywhere because it's in park. And I agree with the court. You turn off the keys because you didn't want him to go anywhere. The area is secure. Just maintain the status quo, turn off the car, make sure nobody's going to get run over, and let the EMTs do their thing. But there was no evidence that he could not have done that himself, even though, and again, I said to Justice when you said that he's passed out or just unconscious, and again, the person who called in didn't know what. I mean, I know there's a lot of speculation late at night in a drive-through. It doesn't make for the best overall assumptions. I mean, was it unreasonable for the police, before he sends this guy on his road, on his way in that motor vehicle, which is, in essence, a 5,000-pound bullet when used wrongly, was it unreasonable for the officer to say, I'm going to check out and see. The paramedic just told me there's no medical issue. And by the way, as far as securing it, like I say, he's got the car and drive. He's passed out, foot on the brake. Paramedic walk up from the front, and then the foot comes off the brake or whatever, or his foot goes to the accelerator to run somebody over. Unconscious people behind the wheel of wedding cars causes, wouldn't you think, average people some concern? Justice, I agree that you don't want a person hitting the gas instead of the brake or the brake instead of the gas. But all this other thing is, isn't the bottom line, did the officer have a right to investigate? In my opinion, the way the call came in and they kept the ambulance away, if there was something else, as in Schaefer, that a person was where they got a call saying the person's under the influence, possibly, and creating a disturbance, I agree wholeheartedly. What if there had been no call and the officer just pulled in to the parking lot, he looks over and sees this guy unconscious behind the wheel of a car at the thing? What's the call going to be? I'm glad that Justice brought that up, because that would be completely different in the sense that he did not get a call and he went over there, much as in the cases of Robinson and Carlson, where they just see the person in the vehicle. But remember, those all occur on the street, and this is on private property. It doesn't make any difference. The DUI statute does not require you to be on a public way. Correct. My point was, not that it was not on public way, well, there's some suspension, but not that it's on public way in the sense that there's a heightened sense of community caretaking function on the roadway when they're sitting there by themselves. Granted, if an officer pulls into a parking lot and sees a person's vehicle stop, not moving, and he's sitting there passed out, and he's in the parking lot, yes, I agree with you. But when he gets a call and he has to secure the area, to me it's an element of some type of criminal activity that he cannot put his finger on, because there's no criminal activity that exists at that point, even in his mind. And so that's where I was at. My point was that it elevated it prior. It was not a community caretaking function because he approached and took the keys or shut it off, period. Okay. Was that wrong? What? Was that wrong for him to do that, shut the keys? Yeah, because in my opinion, at that point he pointed, when he told the ambulance to stay away, to use a better term, and he went in to secure, in my opinion, his belief that there's a criminal activity going on. At least a dangerous activity. Whether it's criminal or not, he didn't know. Correct, he didn't, because the only thing he got on the call was somebody passed out, not knowing the state of it. In the driver's seat. In the driver's seat. You're correct, Justice Smith. But my point, would it make any difference to the court if this was 3 p.m. or 3 a.m.? No. All right. Well, that's, in my opinion, the EMT, I mean, if he would have requested he had some type of injury and request, because why even send him to the EMT except for the fact that the EMT is sitting there? There was no, I mean, if he never complained of injuries, if there's anything wrong, I think there was some communication, are you all right, is there anything wrong, and I think the answer was no, I can't remember the full transcript. But that, to me, surmised his point that there was no criminal activity afoot, and even though, yes, a vehicle is a dangerous, can always be considered a dangerous weapon, but when you take the keys, because he could have asked them and volunteered to stay, as in some of the cases where you stay here and let me ask you some questions and go to the EMT. I think it was more of a command to stay there. Well, suppose it was, so what? I mean, if he passed out in a drive-through lane of a fast food joint, would it be unreasonable to think, gee, if I let him drive away from here, he might pass out also in the right, driving down the road. That could always happen. I'm not going to doubt the court, but something like that could happen. I'm just saying at this point in time, he didn't have enough at his fingertips to say that, in fact, that occurred because all he had was glassy bloodshot eyes and the smell of alcohol on his throat. That, in and of itself, is... And passed out. Passed out. Behind the steering wheel. Correct. You don't think that gives him enough to investigate. You don't think a reasonable police officer ought to say, maybe I ought to ask a few more questions and see what's going on here. If he would have came up initially with the EMTs, if he had asked them to do these things voluntarily, which I think it was more of a command, then I would think that the officer did it respectfully and so with that in mind, I asked him to affirm the trial court's decision, most graciously. I had a problem with the keys and the approach of the vehicle and the waiting. Because if you're going to have to wait and somebody has a heart attack, yes, you have a great lawsuit. You shouldn't have to. You shouldn't have to wait. Nothing further. Justice, any other questions? Thank you for your time. Thank you, Mr. Hanlon. Mr. Arlotto, any rebuttal? Just a brief rebuttal. Thank you, Mr. Court. Officer King testified at page 91 of the record. It was the ambulance's protocol to wait until the officer called it forward. So he did not direct the ambulance to stand by. Robinson, the court, the case Robinson, it was in response to a 911 call. It wasn't the officer suddenly coming upon the scene that was the case in Carlson. But the Robinson case, which we believe is even more similar to Carlson, is a case that had a 911 call. I'd also like to point out that what is the difference is who got there first or when the ambulance got there, when the officer got there. What's that got to do with anything in this case? I don't think it has anything to do with anything. I think it is, as Your Honor pointed out, stated at your red herring. I mean, it essentially is saying that an officer who is called to the scene and sees somebody passed out cannot do any further investigation as long as an ambulance can approach first. What difference does that make? But I would also point out during the course of testimony in the state's case, Officer King, the prosecutor attempted to get into the policy  to proceed when there's potential, when there's an ambulance on the scene. This is page 165 of the record. He explained the officer's approach and let him re-approach, all that, which I would agree is really relevant. But I point out defense counsel objected to going into that question, and the judge said, well, I don't see why it's relevant. So if he's basing his decision on the fact that there's somebody waiting back there, but also it's not relevant, I don't see how that works. But I believe the remainder are, you know, when you come across this scene, and I understand, could it have been simply a Terry stuff situation? You come across somebody. I would suggest potentially, yes, but the cases that we rely upon, the cases, the case law says acuity taking was the initial step, and we believe that that certainly is the case in this situation. But alternatively, it's a reasonable suspicion that something's going on that needs to be investigated by the officer when you find somebody passed out at 4 a.m. in Harvey's Drive. So if there's no other questions, we respectfully ask that this court reverse and amend for further proceedings. Thank you, Your Honor. Thank you. We thank both of you for your arguments this morning. We'll take the case under advisement, and we'll issue a written decision as quickly as possible. The court will stand in recess until 1 p.m. Please rise. The court stands in recess.